Citation Nr: 1532770 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 11-10 692 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUE

Entitlement to service connection for a low back disorder.


REPRESENTATION

Appellant represented by: Mississippi State Veterans Affairs Board


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

C. Lawson, Counsel


INTRODUCTION

The Veteran served with the Air National Guard and had an initial period of active duty for training from May 1981 to September 1981 and served on active duty from March 2002 to March 2003. The Veteran testified at an RO hearing in October 2011 and during a Travel Board hearing before the undersigned Veterans Law Judge in April 2013. The Board remanded the case to the RO in March 2014. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

The Veteran had an initial period of active duty for training from May 1981 to September 1981 and had active duty from March 2002 to March 2003. She claims service connection for a low back disorder. 
 
The record shows that the Veteran reported at her examination in February 1981 for entrance into the Air National Guard that she had incurred an injury to her back from an automobile accident in 1976, and had intermittent low back pain. However, no defect of the spine was noted on the examination report. In February 2001, she reenlisted in the Air National Guard and underwent an entrance examination at which she gave no history of an injury to her back in a motor vehicle accident, nor of having recurrent low back pain. On examination no defect of the spine was noted. The Veteran also had active duty from March 2002 to March 2003, but there is no record of her undergoing an entrance or separation examination. In a December 2002 Post-Deployment Health Assessment, she did not report having any problems with her back; rather, she only reported having problems with her hands and chest wall pain, which is supported by the contemporaneous medical evidence. However, private medical records show complaints of low back pain between May and August 2002 after she tried to lift a box containing a computer desk in May 2002. The August 2002 treatment record shows complaints of back spasms, better on Flexeril. No additional treatment or complaints of low back pain are seen in either service treatment records or outside treatment records until August 2004, when she was seen at the Jackson, Mississippi VA Medical Center, complaining of having back pain for several weeks with radiation down her leg to the bottom of her foot. The assessment was sciatica. 

The Veteran's service treatment records contain a September 2004 note from the Veteran's private physician requesting that she be excused from rigorous PT training/exercises for 4-6 weeks because of ongoing mid back pain. A May 2005 note indicates that her records were received and reviewed and she was noted to have recurrent back pain that had limited her ability to lift greater than 10 to 15 pounds or to stand or sit for long periods of time. It was noted that she was using Darvocet and Flexeril as needed, which could interfere with her ability to perform her duties. It was suggested that a Medical Evaluation Board be initiated. A June 2005 Aeromedical Summary indicates that the Veteran had a 20+ year history of back complaints following a motor vehicle accident and, in the past 2 years she had been having increasing intensity of pain and burning sensation going down the back of the thigh, right heel, and the calf. She reported her back pain being almost constant in any position at any time, and that walking long distances bothered her back. She further reported that she was unable to lift the 80 to 100 pounds required by her military position. The assessment after radiographic studies was chronic lumbago. She was found medically disqualified for worldwide duty and it was recommended that discharge be considered. She was discharged from the Air National Guard in February 2006. 

The Board notes that during this period from 2004 to 2005, she was not on active duty although her service personnel records appear to demonstrate that she continued serving for periods of inactive and active duty for training. She has not contended that her current chronic low back pain is the result of any injury or disease incurred during a period of inactive or active duty for training. Rather, she has stated that its onset was while she was on active duty. 

The Veteran underwent VA examinations in conjunction with her claim for service connection in November 2008. The examiner assessed her, based upon examination and radiographic imaging, to have lumbar degenerative disc disease and facet arthropathy with old T12 compression fracture. In April 2009, the examiner provided a medical opinion as to the etiology of the Veteran's back condition and if her back condition was aggravated by service. The opinion was that the etiology of the Veteran's back condition was the old injury secondary to a motor vehicle accident with T12 compression fracture. The examiner said, however, that it was also due to the development of age-related lumbar facet disease and degenerative disc disease. Regarding an aggravation by service, the examiner noted that the Veteran was in the Air Guard rather than a full-time service member. He stated that, in any event, she had low back pain associated with performance of her job duties. He thought that her low back pain was more likely than not associated with the progressive nature of the degenerative changes in her lower back and less likely as not due to being the direct and proximate result of her duties in the Air Guard. For impairment purposes, he said aggravation implied a permanent worsening of a condition, and he thought the worsening was due to the progressive nature of the degenerative changes in her lower back. 

In support of her claim, the Veteran submitted 2 statements from her private physician dated in July and August 2012. In the July 2012 statement, the physician stated that, after review of all records indicated below (he stated he reviewed record #1, 2, 3, 4, 5), her condition was at least as likely as not due to aggravation of pre-existing back condition. In the August 2012 statement, which is essentially a pre-printed statement with spaces for the physician to complete, the physician opined that "the Veteran has an aggravation of a pre-existing back condition and currently has a diagnosis of 'lumbar pain by aggravation,'" and that this is based on his review of records dated #1, 2,3 4, 5. The Veteran testified at her Board hearing in April 2013 that the records the physician was referring to are her VA treatment records that she had placed in folders with corresponding numbers and had given to the physician. 

In January 2013, the RO sent the Veteran's claims file back to the examiner who conducted the November 2008 VA examination and rendered the April 2009 medical opinion. In the request, it appears the RO provided additional information not previously given, such as that the Veteran had a period of active duty from March 2002 to March 2003. It also asked the examiner to reconsider his opinion based on the additional private opinion. In an addendum dated February 2013, the examiner stated that he had reviewed the private medical statement and, after another review of the evidence of record including information submitted after the prior opinion in April 2009, his reasoning and rationale were unchanged in opining that the Veteran's worsening of her back complaints was due to the progressive nature of the degenerative changes in her lower back. Another opinion was rendered by this examiner in July 2014, but it did not fulfill the requests made by the Board in its March 2014 remand. 

A Veteran who served during a period of war or during peacetime after December 31, 1946 is presumed to be in sound condition when he or she entered service except for conditions noted on the entrance examination. The presumption of soundness can be rebutted by clear and unmistakable evidence that the disorder existed prior to entry. In determining whether a disorder existed prior to entry into service, it is important to look at accepted medical principles including clinical factors pertinent to the basic character, origin, and development of the disorder. 38 C.F.R. § 3.304(b(1) (2014). History given by the Veteran, which conforms to accepted medical principles, in conjunction with basic clinical data, is probative evidence of the incurrence, symptoms, and course of the disorder. 38 C.F.R. § 3.304(b)(2). 

A preexisting injury or disease will be considered to have been aggravated by active service where there is an increase in disability during service. Where the evidence shows that there was an increase in disability during service, there is a presumption that the disability was aggravated by service In order to rebut the presumption of aggravation, there must be clear and unmistakable evidence (obvious or manifest) that the increase in severity was due to the natural progress of the disability. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306(a) and (b). Intermittent flare-ups during service of a preexisting injury or disease do not constitute aggravation. Rather, the underlying condition must have worsened. 

As the Veteran had no entrance examination conducted at the time of her March 2002 entry into active duty, the presumption of soundness attaches to her condition at the time of entrance onto that period of active duty, and so VA can only consider aggravation if it can rebut that presumption of soundness. Based on the evidence of record, the Board finds that an additional medical opinion is needed as indicated below. Beforehand, however, any additional relevant medical records should be obtained. The Veteran mentioned in April 2015 that she had been seen by a private physician at St. Dominic Hospital in Jackson, Mississippi, and would supply his evaluation as soon as it became available to her. That report of treatment has not been provided to date.

Accordingly, the case is REMANDED for the following action:

1. Make arrangements to obtain any additional relevant medical records, including from a private physician at St. Domenic Hospital which the Veteran mentioned in April 2015 that she had seen. 

2. After completing the above, obtain a VA medical opinion for the Veteran's claim for service connection for a low back disorder. It is imperative that the claims file be made available to the examiner for review in connection with the examination. The examiner is to carefully and thoroughly review the record and render medical opinions as to the following: 

Did either the old T12 compression fracture or the lumbar degenerative disc disease and facet arthropathy exist during the period of service from March 2002 to March 2003? If so, did either disorder clearly and unmistakably pre-exist the Veteran's entry into active duty in March 2002? 

If so, is there clear and unmistakable evidence that any pre-existing disability did not undergo an increase in the underlying pathology during service? If there was an increase in severity of any pre-existing back disability during such service, was that increase due to the natural progress of the disease, or was it above and beyond the natural progression? 

If clear and unmistakable evidence does not exist that either low back condition pre-existed the March 2002 to March 2003 period of active service and was not aggravated during such service, is it at least as likely as not (a probability of at least 50 percent) that the currently diagnosed low back conditions of old T12 compression fracture and lumbar degenerative disc disease and facet arthropathy are related to or had their onset during that period of active service? 

A discussion of the facts and the medical principles involved will be of considerable assistance to the Board. Please be sure to answer exactly the questions which have been asked, such as whether any disorder now shown clearly and unmistakably pre-existed the Veteran's entry into active duty in March 2002, and whether there is clear and unmistakable evidence that any pre-existing disability did not undergo an increase in the underlying pathology during service.

3. Thereafter, the RO should readjudicate the Veteran's pending claim in light of any additional evidence added to the record. If the benefits sought on appeal remain denied, the Veteran and her representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
Michael Martin
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).